IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 23-cv-2160

ALYSSA OLIVIERI,

        Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

        Defendant.

## COMPLAINT

### INTRODUCTION

1. In 1978, Congress passed the Electronic Funds Transfer Act, 15 U.S.C § 1693 *et seq.* (the "EFTA") "to create rights for consumers in an era in which banking could be conducted almost exclusively through machines." *Wachter v. Denver Nat'l Bank*, 751 F. Supp. 906, 908 (D. Colo. 1990). These rights were necessary because "[t]he absence of personal contact was seen as a disadvantage in an automated system that is much more vulnerable to fraud, embezzlement and unauthorized use than traditional payment methods." *Id.* The purpose of the EFTA was "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b), "The primary objective of [EFTA], however, is the provision of individual consumer rights." *Id.*

2. Plaintiff Alyssa Olivieri ("Plaintiff") brings this action to vindicate her rights under the EFTA. On May 11, 2023, Plaintiff's bank account information with Defendant

JPMorgan Chase Bank, N.A. (the "Bank") was compromised through a sophisticated spoofing scam. A team of thieves repeatedly called Plaintiff on her cell phone pretending to be the Bank and falsifying the information sent to Plaintiff's called ID to make it appear as though the call was coming from the Bank. When Plaintiff finally answered, another member of the team of thieves separately contacted the Bank to cause the Bank to send a verification code to Plaintiff's cell phone. Convinced that the thieves were actually calling from the Bank, Plaintiff relayed the code to the thieves, who then relayed the code to the Bank and used the code to open a "digital wallet" for Plaintiff's checking and savings accounts with the Bank.

3. Then the thieves went to town. Using this digital wallet, the thieves proceeded to make twenty-nine (29) separate ATM withdrawals at three different ATMs owned or operated by the Bank. By the time they were done, Plaintiff had only $0.64 left in her checking and savings accounts.

4. Once Plaintiff learned that all of her money was stolen, she contacted the Bank. Aware of how these scams go, the Bank explained to Plaintiff exactly what had happened and how the scam was successful. Andrew, the representative of the Bank that Plaintiff spoke with, explained that this is happening "a lot" and that it would take about ten business days to get Plaintiff's money back.

5. Ten business days came and went, and the Bank did not credit Plaintiff's account or acknowledge in writing that she had disputed all of the charges. Instead, the Bank simply denied most, but not all, of the claims. Undeterred, Plaintiff continued to contact the Bank to get her money back. In a series of phone calls with the Bank, the Bank ultimately reversed one of the fraudulent transactions for $68.00 from her checking account and transactions totaling $1,400.00 from her savings account, but refused to credit the remaining amount that was stolen.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8. Plaintiff is a natural person who resides in the County of Adams, State of Colorado.

9. Plaintiff is a "consumer", as that term is defined by 15 U.S.C. § 1693a(6).

10. Plaintiff is a "person", as that term is defined by 12 C.F.R. § 1005.2(j).

11. The Bank is a national banking association operating from an address of 1111 Polaris Parkway, Columbus, Ohio 43240.

12. The Bank is a "financial institution", as that term is defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i).

## FACTS

13. Plaintiff has a demand deposit account, commonly referred to as a checking account, with the Bank (the "Checking Account").

14. Plaintiff uses her Checking Account primarily for personal, family, or household purposes.

15. The Checking Account is not held or established pursuant to a bona fide trust relationship.

16. The Checking Account is an "account", as that term is defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. § 1005(2)(b)(1).

17. Plaintiff has a savings account with the Bank (the "Savings Account").

18. Plaintiff uses her Savings Account primarily for personal, family, or household purposes.

19. The Savings Account is not held or established pursuant to a bona fide trust relationship.

20. The Savings Account is an "account", as that term is defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. § 1005(2)(b)(1).

21. The Checking Account and Savings Account are referred to collectively as the "Accounts".

22. On May 11 and 12, 2023, thieves initiated twenty-nine (29) separate ATM withdrawals from Plaintiff's Accounts, consisting of twenty-eight withdrawals from her Savings Account and one withdrawal from her Checking Account (collectively, the "Withdrawals").

23. An ATM machine is an "electronic terminal", as that term is defined by 12 C.F.R. § 1005.2(h).

24. The Withdrawals were not originated by check, draft, or similar paper instrument.

25. The Withdrawals were initiated by using a "digital wallet" attached to Plaintiff's Accounts.

26. The digital wallet as an "access device", as that term is defined by 12 C.F.R. § 1005.2(a)(1).

27. The digital wallet was obtained through fraud.

28. Plaintiff did not provide the digital wallet to the thieves.

29. The Bank provided the digital wallet to the thieves.

30. The Withdrawals were "electronic fund transfers", as that term is defined by 15 U.S.C. § 1693a(7) and 12 C.F.R. § 1005.3(b).

31. The Withdrawals were initiated by a person or persons other than Plaintiff.

32. Plaintiff did not give the person or persons the actual authority to initiate the Withdrawals.

33. Plaintiff did not receive any benefit from the Withdrawals.

34. The Withdrawals were "unauthorized electronic funds transfers", as that term is defined by 15 U.S.C. § 1693a(12).

35. The Withdrawals were "errors", as that term is defined by 15 U.S.C. § 1693f(f) and 12 C.F.R. § 1005.11(a).

36. The Withdrawals were a single series of unauthorized electronic funds transfers.

37. On or about May 12, 2023, Plaintiff orally notified the Bank that the Withdrawals were not authorized and were fraudulent (the "Notice").

38. In the Notice, Plaintiff told the Bank that she did not make the withdrawals.

39. In the Notice, Plaintiff set forth and enabled the Bank to identify Plaintiff's name and account number.

40. In the Notice, Plaintiff indicated her belief that her Accounts contained a series of errors and the amounts of those errors.

41. In the Notice, Plaintiff set forth the reasons for her belief that the errors had occurred.

42. On information and belief, the Bank did not conduct any investigation following the Notice.

43. The Bank reviewed only the details of the transactions, such as where they occurred and which access device was used and did not gather any information to determine whether Plaintiff made the Withdrawals.

44.     To the extent that the Bank did conduct an investigation following the Notice, the Bank did not conduct such investigation in good faith.

45.     A good faith investigation would have entailed reviewing the actual, physical transactions to determine the identity of the person or persons who made the withdrawals and a good faith belief that Plaintiff was being honest when she told the Bank that the withdrawals were not authorized and were fraudulent.

46.     To the extent that the Bank did conduct an investigation following the Notice, the Bank did not have a reasonable basis for believing that the Plaintiff's account was not in error.

47.     The Bank did not have a reasonable basis for believing that Plaintiff authorized the transactions when a representative of the Bank named Andrew confirmed that the transactions were actually the result of fraudulent use of an unauthorized device.

48.     The Bank could not reasonably conclude that some, but not all, of the transactions were unauthorized.

49.     The Bank knowingly and willfully concluded that Plaintiff's Accounts were not in error but such conclusion could not reasonably have been draw from the evidence available to the Bank at the time of its alleged investigation.

50.     For example, seven of the Withdrawals were done from Plaintiff's Savings Account from an ATM located at 1760 16th Street, Denver, Colorado 80202. At or about the same time and at the same ATM and using the same digital wallet, one of the Withdrawals was done from Plaintiff's Checking Account. The Bank concluded that the seven Withdrawals from Plaintiff's Savings Account were authorized but the one Withdrawal from Plaintiff's Checking Account was unauthorized. When Plaintiff discussed this situation with the Bank on July 7, 2023, the Bank confessed that it had not even opened an investigation into the seven Withdrawals from Plaintiff's Savings Account on May 12, 2023, because the

transactions had not yet "posted" to the Savings Account when Plaintiff provided the Notice. Once the Bank did open an investigation into the Withdrawals from Plaintiff's Savings Account that occurred on May 12, 2023, the Bank credited those amounts back to Plaintiff but did not credit the remaining withdrawals from the previous day using the same fraudulently obtained digital wallet.

51. The Bank could have reviewed the video footage from the ATM withdrawals to confirm the identity of the person or persons who used the digital wallet to steal Plaintiff's money.

52. The Bank could have reviewed the video footage from the ATM withdrawals to confirm that Plaintiff did not make the Withdrawals.

53. The Bank did not review the video footage from the ATM withdrawals to confirm the identity of the person or persons who used the digital wallet to steal Plaintiff's money.

54. The Bank did not review the video footage from the ATM withdrawals to confirm that Plaintiff did not make the Withdrawals.

55. The Bank did not consider Plaintiff's evidence that she was not physically present at the ATMs where the Withdrawals occurred and therefore, did not make the withdrawals.

56. On information and belief, the Bank routinely denies similar claims by claiming that the victims of such fraudulent schemes authorized the fraudulent withdrawals contrary to all evidence.

57. Rather than conduct an investigation, the Bank contended that it was Plaintiff's obligation to provide evidence that she did not make the Withdrawals and told Plaintiff to go to the Bank's branch locations to obtain the Bank's ATM video footage to provide to the Bank.

58. Within ten (10) business days of receiving Plaintiff's Notice, the Bank did not report or mail the results of such investigation and determination to Plaintiff for all of the Withdrawals that Plaintiff contended were unauthorized errors.

59. Instead, the Bank sent a form letter on May 16, 2023, stating that it had completed research for some of the Withdrawals.

60. The foregoing letter does not contain an explanation of its findings.

61. The foregoing letter includes only the Bank's conclusion that "We found that the transaction[s] was processed according to the information you provided or was authorized."

62. Within ten (10) business days of receiving Plaintiff's Notice, the Bank did not provisionally recredit Plaintiff's Accounts for the amount alleged to be in error, including interest where applicable.

## COUNT I
### (Violations of EFTA)

63. Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth herein.

64. The Bank has failed to investigate the alleged errors, determine that an error has occurred, and report or mail the results of such investigation and determination within ten business days to Plaintiff in violation of 15 U.S.C. § 1693f(a).

65. The Bank has failed to provisionally recredit Plaintiff's accounts for the amount alleged to be in error, including interest as applicable, pending the conclusion of its investigation and its determination of whether an error has occurred in violation of 15 U.S.C. § 1693f(c).

66. The Bank has failed to deliver or mail to Plaintiff an explanation of its findings within three business days after the conclusion of its investigation. 15 U.S.C. § 1693f(d)

67. Plaintiff is not liable for the Withdrawals because the Withdrawals were unauthorized. 15 U.S.C. § 1693g(a).

68. Plaintiff is not liable for the Withdrawals because the Withdrawals the means of access was not accepted by Plaintiff. *Id.*

69. Plaintiff is entitled to actual damages in an amount to be determined at trial. 15 U.S.C. § 1693m(a)(1).

70. Plaintiff is entitled to statutory damages in an amount of at least $100.00 and not more than $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A).

71. Plaintiff is entitled to treble damages pursuant to 15 U.S.C. § 1693f(e).

72. Plaintiff is entitled to her reasonable attorney fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Alyssa Olivieri prays for relief and judgment against Defendant JPMorgan Chase Bank N.A., as follows:

1. Awarding her actual damages pursuant to 15 U.S.C. § 1693m(a)(1), trebled under 15 U.S.C. § 1693f(e);

2. Awarding statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1693(a)(2);

3. Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00, jointly and severally, against both defendants;

4. Awarding reasonable attorney fees and costs incurred in this action, pursuant to 15 U.S.C. § 1693m(a)(3);

5. Awarding pre-judgment and post-judgment interest as may be allowed under the law; and

6. Awarding such other and further relief as the Court may deem just and proper.

## **TRIAL BY JURY**

Plaintiff is entitled to and hereby demands a trial by jury.

Dated: August 24, 2023

                                              Respectfully submitted,

                                              /s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com